PEOPLE *v.* CARL.

1. HOMICIDE—MURDER—DEGREE OF CRIME—HEARING.
   No hearing was necessary to determine the degree of the crime when a defendant, charged with murder in the first degree, pled guilty of second-degree murder (CL 1948, §§ 750.316, 750.317).

2. SAME—GUILTY PLEA—ACCEPTANCE.
   Acceptance of plea of guilty of second-degree murder after extensive interrogation regarding defendant's sensibilities at the time of stabbing was not error where the court learned he entered a house unfamiliar to him, he did not know where he was or why he was there, and that he had no intention of committing the crime, but knew that what he was doing would result in death (CL 1948, § 750.317).

3. SAME—SECOND-DEGREE MURDER—PLEA OF GUILTY—ASSISTANCE OF COUNSEL.
   Defense counsel, assigned to represent defendant in prosecution for murder, *held*, not to have acted improperly in assisting defendant to plead guilty to murder in the second degree in view of defendant's admissions that he had the intent to cause the very harm that resulted (CL 1948, §§ 750.316, 750.317).

4. CRIMINAL LAW—ASSIGNED COUNSEL.
   An opportunity was given defendant to obtain an attorney when he was advised of his right to assistance of counsel, the ap-

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide § 471.
   Duty of court, upon plea of guilty or nolo contendere to offense involving several degrees, to hear evidence to determine degree. 34 ALR2d 919.
   Court's duty to advise or admonish accused as to consequences of plea of guilty, or to determine that he is advised thereof. 97 ALR2d 549.
[2] 21 Am Jur 2d. Criminal Law §§ 492, 494.
[3, 4] 21 Am Jur 2d, Criminal Law § 488.
[5] 21 Am Jur 2d, Criminal Law § 504.

pointment of assigned counsel was made in open court, and no dissatisfaction with assigned counsel's services was expressed until after the sentence was imposed.

5. SAME—SENTENCE—WITHDRAWAL OF PLEA—DISCRETION OF COURT. The withdrawal of a plea of guilty after sentence is imposed rests within the sound discretion of the court.

Appeal from Gratiot; Corkin (Leo W.), J. Submitted Division 3 January 8, 1968, at Grand Rapids. (Docket No. 4,153.) Decided April 25, 1968.

Richard Leroy Carl was convicted, upon a plea of guilty, of murder in the second degree. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jack T. Arnold,* Prosecuting Attorney, for the people.

*Kenneth B. Montigel,* for defendant.

BURNS, J. Defendant appeals from an order denying defendant's motion to withdraw his plea of guilty to murder in the second degree,[1] vacate sentence and grant a new trial.

The record indicates that at about 3:00 a.m. or 3:30 a.m., October 11, 1966, the defendant, who had been drinking heavily, entered a house in St. Louis, Michigan, through a kitchen window. Inside he killed Mrs. Emily Housel (whom he had never seen before this time) with a knife which he took from the kitchen sink. Defendant then went to the garage and drove the Housel automobile to Tallahassee, Florida. Later he was apprehended and charged with murder in the first degree.[2] With the advice of assigned counsel defendant pleaded guilty to

---

1 CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549).
2 CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).

second degree murder and was sentenced to life imprisonment. Different counsel was appointed to assist in defendant's unsuccessful attempt to withdraw his plea of guilty.

Defendant first contends that the arraigning circuit judge should have taken testimony to determine the degree of the crime pursuant to CL 1948, § 750.318 (Stat Ann 1954 Rev § 28.550). Defendant specifically pleaded guilty to second-degree murder, and therefore no hearing was necessary to determine the degree of the crime. See *People* v. *Grillo* (1948), 319 Mich 586.

The question remains, however, whether the court erred in accepting defendant's guilty plea after it learned that the defendant went into a house which was unfamiliar to him, did not know where he was or why he was there and had no intention of committing any crime therein. It appears that the arraigning court's recognition of defendant's claimed lack of awareness of his surroundings caused the court to extensively interrogate Carl regarding his sensibilities at the time of the stabbing:

"*The Court:* Well, did you cut her throat?

"*Mr. Carl:* Yes.

"*The Court:* Did you know that in doing this it would kill her?

"*Mr. Carl:* Yes.

"*The Court:* That's what I am getting at. Did you know what you did would result in her death?

"*Mr. Carl:* Yes.

"*The Court:* You knew that? No question about that, is there?

"*Mr. Carl:* No.

"*The Court:* I wasn't asking you whether you had planned this. I was asking what you actually did at the time; whether you knew what you were doing would result in her death.

"*Mr. Carl:* Yes.

"*The Court:* You knew that?

"*Mr. Carl:* Yes."

Defendant's admissions manifest a second-degree murder intent which has been described in *People* v. *Hansen* (1962), 368 Mich 344, 350, as an "intent to cause the very harm that results." Furthermore:

"If a person voluntarily or willfully does an act which has a direct tendency to destroy another's life, the natural and necessary conclusion from the act is that he intended so to destroy such person's life."  40 CJS, Homicide, § 17, p 864.

Defendant's acknowledgment that he knew death would result from his acts justifies the court's acceptance of the plea as against defendant's claim that he formed no intent to kill.

By the same token, contrary to defendant's second claim on appeal, we find that defense counsel did not act improperly in assisting the defendant to plead guilty to murder in the second degree.

Defendant's third claim of error is that although he was advised of his right to assistance of counsel, he was not given the opportunity to obtain an attorney of his own choice.  Assigned counsel appears not to have been foisted upon defendant; the appointment was made in open court, and no dissatisfaction with assigned counsel's services was expressed until after the sentence had been imposed. At the hearing on defendant's motion to withdraw his plea, he testified as follows:

"*Q.* [*Assigned appellate counsel*] Well now it has been your contention here in your motion that you didn't have an opportunity to obtain counsel.  What did you mean by that?

"*A.* Legal counsel.  My own counsel of my own choice.

"*Q.* I see. Well of course you are aware that you did have a court appointed attorney, did you not?

"*A.* Yes.

"*Q.* Was there ever a time when you asked to have the right to obtain your own counsel?

"*A.* I didn't—

"*Q.* Was there ever a time after your arrest when you asked any officer or any court for the right to obtain your own attorney of your own choice?

"*A.* No.

"*Q.* Did you ask such right?

"*A.* No."

We find no merit in defendant's argument on this issue.

The last assignment of error can be stated as follows: did the trial court comply with the mandatory requirements of CL 1948, § 768.35 (Stat Ann 1954 Rev § 28.1058) and GCR 1963, 785.3(2)? The court's examination of defendant at the arraignment was more comprehensive than the exchange which was quoted with approval in *People* v. *Collins* (1967), 7 Mich App 421, 423. As previously noted, the defendant testified extensively at the hearing on the motion which is being reviewed. From carefully reading the transcript of that hearing (69 pages) and the transcript of the arraignment (15 pages) this Court finds that the trial judge did not abuse his discretion[3] in refusing permission to withdraw defendant's plea.

Affirmed.

J. W. FITZGERALD, P. J., and NEAL E. FITZGERALD, J., concurred.

---

[3] "After sentence the withdrawal of a plea rests within the sound discretion of the court. *People* v. *Williams* (1923), 225 Mich 133; *People* v. *Kobrzycki* (1928), 242 Mich 44; *People* v. *Skropski* (1940), 292 Mich 461; *People* v. *Vasquez* (1942), 303 Mich 340; *People* v. *Kearns* (1965), 2 Mich App 60." *People* v. *Wilkins* (1966), 3 Mich App 56, 58.