PEOPLE *v.* HARPER

OPINION OF THE COURT

1. CRIMINAL LAW—PLEA OF GUILTY—DOUBLE JEOPARDY—LESSER OFFENSE.

A guilty plea to a lesser, or related, offense does not necessarily imply that a defendant is innocent of the greater offense when, at some subsequent proceeding, he invokes the constitutional bar of double jeopardy (US Const, Am 5).

2. CRIMINAL LAW—PLEA OF GUILTY—DOUBLE JEOPARDY.

A guilty plea is as final as a jury verdict, but the double jeopardy implications reverberating from a guilty plea and a jury verdict are not identical; therefore, a reviewing court should not apply the jeopardy bar without considering the milieu in which the jeopardy claim is asserted (US Const, Am 5).

3. CRIMINAL LAW—PLEA OF GUILTY—ACCEPTED PLEA—DOUBLE JEOPARDY.

An accepted plea of guilty of manslaughter did not acquit the defendant of the greater offenses of first- and second-degree murder where the trial judge had set aside the manslaughter plea because he had improperly examined the defendant to determine the degree of homicide after the defendant had confessed and pled guilty of second-degree murder; the defendant's second plea of guilty of second-degree murder, made after his plea of guilty of manslaughter had been set aside, did not constitute double jeopardy (US Const, Am 5; MCLA § 750.318).

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 495.
[2, 3, 5, 6, 9, 10] 21 Am Jur 2d, Criminal Law § 165 *et seq.*
[5, 6, 9] 21 Am Jur 2d, Criminal Law § 476.

4. HOMICIDE—PLEA OF GUILTY—VACATED PLEA—EFFECT.

Vacation of the defendant's guilty plea to manslaughter, which had been improperly accepted, meant that the case stood as before the defendant's rearraignment for first-degree murder, a plea of not guilty to an open charge of murder.

5. CRIMINAL LAW—PLEA OF GUILTY—DOUBLE JEOPARDY—WAIVER OF JEOPARDY.

A plea of guilty is a waiver of the jeopardy defense where the plea is a deliberate choice of strategy.

6. HOMICIDE — SECOND-DEGREE MURDER — GUILTY PLEA — TRIAL STRATEGY — WAIVER OF JEOPARDY.

Defendant's twice-tendered and finally-accepted plea of guilty of second-degree murder was a deliberate choice of strategy where the defendant was charged with first-degree murder which carried a mandatory life sentence, and where the defendant once raised the jeopardy defense at trial, but later wholly abandoned it.

DISSENT BY MAHINSKE, J.

7. CRIMINAL LAW—LESSER INCLUDED OFFENSE—CONVICTION OF LESSER OFFENSE—EFFECT.

*A conviction of a lesser included offense is an acquittal of a greater degree of the same offense (MCLA § 768.33).*

8. CRIMINAL LAW—PLEA OF GUILTY—ACCEPTED PLEA—EFFECT.

*An accepted plea of guilty is itself a conviction; nothing remains but to give judgment and determine punishment.*

9. CRIMINAL LAW—DEFENSES—DOUBLE JEOPARDY—WAIVER.

*Double jeopardy defense cannot be waived by a failure to raise it in the trial court.*

10. HOMICIDE—PLEA OF GUILTY—VACATED PLEA—COURT'S VACATION OF PLEA—DOUBLE JEOPARDY.

*Acceptance of defendant's guilty plea of manslaughter acquitted him of the greater offenses of first-degree murder and second-degree murder where the trial court, sua sponte, vacated the accepted manslaughter guilty plea.*

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 October 14, 1970, at Detroit. (Docket No. 7528.) Decided March 29, 1971. Leave to appeal granted, 385 Mich 764.

Willie J. Harper was convicted, on his plea of guilty, of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

Willie J. Harper, *in propria persona.*

Before: J. H. GILLIS, P. J., and DANHOF and MAHINSKE,* JJ.

J. H. GILLIS, P. J. Defendant, Willie J. Harper, was charged with first-degree murder[1] and, when brought to trial, tendered his counseled plea of guilty to second-degree murder.[2] The court conducted an examination as to the degree of murder pursuant to MCLA § 750.318 (Stat Ann 1954 Rev § 28.550), and determined that at most defendant could be guilty of manslaughter.[3] Defendant then offered a plea of guilty to manslaughter which the court accepted.

A month later, without defendant having been sentenced, the court set aside the conviction, ruling that the examination under the statute was improper since defendant had confessed and pleaded guilty to a specific degree of murder and the court did not have the authority to reduce the charge on its own motion. See *People* v. *Carl* (1968), 11 Mich App 226, 228. The case was reassigned to the same

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

[2] MCLA § 750.317 (Stat Ann 1954 Rev § 28.549).

[3] MCLA § 750.321 (Stat Ann 1954 Rev § 28.553). This determination was made on the sole basis of defendant's rather elusive, forgetful, and exculpatory description of the fatal event.

judge and defendant offered a plea of guilty to second-degree murder which was then accepted. Following sentencing, defendant Harper was granted leave to file a delayed appeal.

On appeal, defendant Harper, *in propria persona,* attacks his conviction and sentence for second-degree murder on the basis that he was twice put in jeopardy for different degrees of the same crime. We are told that his guilty plea to the lesser included offense of manslaughter operated as an acquittal of the greater offenses. *Cf. Mullreed* v. *Kropp* (CA 6, 1970), 425 F2d 1095. Thereafter, Harper contends he could not be convicted, following the trial court's vacation of the manslaughter plea, of the greater offense of second-degree murder.

The people contend that defendant Harper waived the asserted jeopardy bar by his failure to raise the question at the second plea proceeding.

This case demonstrates once again that the guilty plea and the jeopardy clause prove litigious—as well as strange—bedfellows.

We view with caution the oft-repeated claim, raised here by defendant Harper and, unfortunately, accepted by some courts, that a guilty plea to a lesser, or related, offense necessarily implies defendant's innocence of the greater offense whenever at some subsequent proceeding defendant invokes an alleged jeopardy bar. As this case indicates, all too frequently appellate courts are invited to adjudicate such claims in a mechanistic fashion; a reviewing court is asked to apply the jeopardy bar without regard to the milieu in which the jeopardy claim is asserted. The Tenth Circuit Court of Appeals put the point well when it recently observed:

"It is true that a guilty plea is as final as a jury verdict *but the double jeopardy implications re-*

*verberating from a guilty plea and a jury verdict
are not identical." Ward* v. *Page* (CA 10, 1970),
424 F2d 491, 493. (Emphasis supplied.)

The jeopardy reverberations said by defendant
Harper to follow as necessarily incident to his plea
of guilty to manslaughter in this case ring in our
judicial ears in precisely the opposite direction.
With all deference to Harper's *in propria persona*
efforts, we affirm defendant's conviction of second-
degree murder entered on his twice tendered, finally
accepted, guilty plea.

## I

After careful study of the record, we are satisfied
that Harper, on learned advice of counsel, deliber-
ately chose to forego any alleged violation of his
right not to be twice placed in jeopardy for the same
offense. By his counseled plea, defendant avoided
the risk of what, on this record, appears to be the
substantial certainty of a conviction after trial of
murder in the first degree.[4] But for the prosecutor's
agreement to allow defendant "in the best interests
of justice"[5] to enter a plea to the lesser-included
offense of second-degree murder, Harper could have
been required to run the gantlet of what, almost
assuredly, would have resulted in a conviction of
first-degree murder. What was done here in no wise
conflicts with the underlying rationale of the jeop-

---

[4] This conclusion is based upon a complete review of the preliminary
examination in this case, see *People* v. *Bradshaw* (1970), 28 Mich
App 354, as well as a review of the several plea proceedings. The
examination was on a charge of first-degree murder. At its con-
clusion defendant was bound over for trial on a charge of first-degree
murder. The testimony for the people at the examination was quite
conclusive. There were several eyewitnesses to the later charged
offense.

[5] Such an expression, entered on the record by the prosecutor in
this case, indicates a negotiated plea. For a discussion, see LaFave,
"The Prosecutor's Discretion in the United States," 18 Am Jur
of Comp L 532, 540 (1970).

ardy clause: "[T]o make rare indeed the occasions when the citizen can for the same offense be required to run the gantlet twice." *Gori* v. *United States* (1961), 367 US 364, 373 (81 S Ct 1523, 1528, 6 L Ed 2d 901, 907). (Dissenting opinion by Mr. Justice Douglas.) On the contrary, by virtue of what fairly appears as a negotiated plea Harper avoided running the gantlet even once. Nothing in the jeopardy clause, state or Federal, requires that we set aside Harper's plea on jeopardy objections first raised by Harper, *in propria persona,* at this late appellate stage.

A fair reading of the record in this case indicates that, as a matter of strategy, defendant on advice of counsel opted to bargain anew for the probable *quid pro quo*—a sentence less than the mandatory term of life imprisonment—notwithstanding putative objections of double jeopardy at trial below. The record contains a memorandum of law asserting an alleged jeopardy bar to any proceeding other than sentencing of the defendant for manslaughter. However, this objection was never pressed at trial; instead, the trial judge noted on the record:

"Upon a re-examination of the law, the court was satisfied that it was wrong; that where there is a specific degree of homicide charge and a plea is intelligently and voluntarily offered to that degree of homicide there is no authority in the court's—or obligation on the part of the court to take testimony for the purpose of fixing the degree of homicide. Accordingly, the court decided to put everything back in the same status that it was before the grievous error was made and so the offer of a plea by the defendant was set aside and the matter was sent back to the Presiding Judge for reassignment to another judge for trial, or offer of a plea, as the case may be.

"The Presiding Judge saw fit to send it back to me. I indicated that I would still be reluctant to proceed with the matter *unless there was an agreement on the part of the prosecution, as well as the defense, that I should retain jurisdiction* and that *agreement was placed on the record and today was set as the date for trial.*

"*The present status of the case, therefore, is that you are right where you were when you first came into the court room June 8, 1967.*

"We can take it from there.

"*Mr. Henry* [defense counsel] : May it please the court, my name is Milton Henry. I appear on behalf of the respondent, Willie James Harper, at this time. We would like to enter a plea, if the court would accept the same, to the crime of murder in the second degree.

"I have discussed the matter fully with Mr. Harper. I have had occasion to go over the evidence with him and he advises me that in view of all that had happened and in view of the actual circumstances *he still wishes to enter a plea to the charge of murder in the second degree.*" (Emphasis supplied.)

Since the trial court was without authority to accept defendant's manslaughter plea on its own motion, such acceptance was a nullity; defendant's manslaughter conviction was void; and the trial judge properly set the conviction aside. What was said in *People* v. *Garcia* (1969), 19 Mich App 465, 467, applies here as well:

"When the trial court vacated defendant's plea, the posture of the case was as before the rearraignment, a plea of not guilty to an open charge of murder."

Contrary to defendant's expressly abandoned position at trial—an abandonment grounded upon considerations of strategy—Harper could lawfully have

been retried for murder in the first degree. *Cf.
People* v. *Garcia, supra; People* v. *Burt* (1970), 29
Mich App 275.

The trial judge made the nature of the strategem
of which we write perfectly clear when he noted at
Harper's sentencing:

"Counsel, Mr. Henry, has done an exceptional job
representing you, trying to make the best of what
some other lawyer would regard as a hopeless situa-
tion. You are really fortunate in that the charge
against you is murder in the second degree rather
than murder in the first degree. If it were murder
in the first degree there would be no alternative but
to sentence you away for the rest of your life.
Murder in the second degree is punishable in
Michigan by any number of years up to life."

Harper was sentenced to a period of incarceration
for no more than 20 years.

To recapitulate: By his plea, Harper avoided the
risk of a mandatory life sentence; he chose rather
to opt for the probability, later realized, of a lesser
term of years. Since defendant as a matter of
strategy decided at trial to abandon what he now
so vigorously voices as his jeopardy objection, we
hold on appeal that defendant is bound by his bar-
gain—a bargain freely and voluntarily entered.[6]

---

[6] Defendant makes no claim that his plea was involuntary. Fur-
thermore, it is appropriate on this point to quote the recent pro-
nouncement of the United States Supreme Court in *Brady* v. *United
States* (1970) 397 US 742 (90 S Ct 1463, 1470; 25 L Ed 2d 747,
758, 759): "We decline to hold, however, that a guilty plea is
compelled and invalid under the Fifth Amendment whenever motivated
by the defendant's desire to accept the certainty or probability of a
lesser penalty rather than face a wider range of possibilities extend-
ing from acquittal to conviction and a higher penalty authorized
by law for the crime charged.
   *   *   *
"[W]e cannot hold that it is unconstitutional for the State to
extend a benefit to a defendant who in turn extends a substantial
benefit to the State and who demonstrates by his plea that he is
ready and willing to admit his crime and to enter the correctional
system in a frame of mind which affords hope for success in re-

Again, nothing in the Constitutions, state or Federal, requires a contrary conclusion.

For authority, we need go no further than to note that it is well established that a deliberate choice of strategy waives the jeopardy defense. See *Henry* v. *Mississippi* (1965), 379 US 443, 450, 451 (85 S Ct 564, 569; 13 L Ed 2d 408, 414, 415). Such a choice is obvious in this case. The record makes it abundantly clear that, while a jeopardy defense was putatively considered at trial, it was later wholly abandoned. There is no need for this Court to resurrect the alleged jeopardy bar where the defendant—to complete the metaphor—deliberately chose to bury the defense at trial. Compare: *People* v. *Bower* (1966), 3 Mich App 585; *People* v. *McPherson* (1970), 21 Mich App 385.

## II

Although we might rest solely on the ground that defendant Harper waived any claim to double jeopardy, we think it appropriate to add a final observation.

It is simply time for some clear thinking regarding the recently obfuscated nexus between the guilty plea and the jeopardy clause. Those familiar with jeopardy jurisprudence will undoubtedly recognize our reference to the recent opinion of the Sixth Circuit Court of Appeals, *Mullreed* v. *Kropp, supra.*

We hereby express total disagreement with the *Mullreed* opinion. It ignores the importance of the

---

habilitation over a shorter period of time than might otherwise be necessary.

"A contrary holding would require the States and Federal Government to forbid guilty pleas altogether, to provide a single invariable penalty for each crime defined by the statutes, or to place the sentencing function in a separate authority having no knowledge of the manner in which the conviction in each case was obtained. In any event, it would be necessary to forbid prosecutors and judges to accept guilty pleas to selected counts, to lesser included offenses, or to reduced charges. The Fifth Amendment does not reach so far."

plea milieu. Compare *Ward* v. *Page, supra*. We agree, rather, with every contention raised on behalf of the State of Michigan in *Mullreed* and think the Sixth Circuit's opinion should not and need not be followed in Michigan. This is especially true with regard to Judge Phillips' characterization of Michigan law appearing at pp 1100, 1102:

> "We think the conviction and sentence necessarily show that the trial court found an evidentiary concurrence of the elements required for the conviction, otherwise the conviction on the guilty plea would not have been lawful.

> \*     \*     \*

> "It is apparent that the conviction on the lesser offense requires an affirmative finding that the actor was not armed with a dangerous weapon. This determination necessarily is inconsistent with a concurrent or subsequent finding that he committed robbery while armed."

Such is not the State of Michigan's law. For complete explication, see *People* v. *Sylvester Johnson* (1970), 25 Mich App 258.

Defendant Harper's conviction upon his plea of guilty to the reduced charge of second-degree murder is affirmed.

Danhof, J. (*concurring*). I concur in the result reached by Judge Gillis in his opinion with the exception of part II. It is not that I disagree with what Judge Gillis states in part II but I do not believe it is necessary for a decision in this case.

Mahinske, J. (*dissenting*). The majority opinion relies heavily, to my way of thinking, on prior decisions where attempts were made (*and some successfully*) by the defendant to have prior pleas set aside. Thereafter the same defendant argues he should have *res judicata* benefits because *of* his prior plea

(which *he* had had set aside) used as a double jeopardy defense to that prior pled-to-charge and greater charges then pending. To this legal (lockup) logic, I, of course, disagree. Such logic would dictate that every retrial or new trial, at defendant's insistence, must be for the next lesser offense. Such just is not the law.

It is my opinion that the law of the State of Michigan is that a conviction of a lesser included offense is an acquittal of a greater degree of the same offense. MCLA § 768.33 (Stat Ann 1954 Rev § 28-.1056); *People* v. *White* (1969), 15 Mich App 527; *Green* v. *United States* (1957), 355 US 184 (78 S Ct 221, 2 L Ed 2d 199); *Benton* v. *Maryland* (1969), 395 US 784 (89 S Ct 2056, 23 L Ed 2d 707). A plea of guilty, when accepted, is itself a conviction; nothing remains but to give judgment and determine punishment. *Boykin* v. *Alabama* (1969), 395 US 238 (89 S Ct 1709, 23 L Ed 2d 274); *People* v. *Bower* (1966), 3 Mich App 585.

The Federal constitutional right to the defense of double jeopardy cannot be waived by failure to raise the question below. *People* v. *McPherson* (1970), 21 Mich App 385; *Henry* v. *Mississippi* (1965), 379 US 443 (85 S Ct 564, 13 L Ed 2d 408).

The rule set out in *McPherson,* applying the Federal standards announced in *United States, ex rel. Hetenyi,* v. *Wilkins* (CA2, 1965) 348 F2d 844, *cert den* 383 US 913 (86 S Ct 896, 15 L Ed 2d 667), and *Benton* v. *Maryland, supra,* catches this case of Willie J. Harper. Harper's plea to manslaughter was accepted by the court as a valid plea to a lesser included offense. Defendant Harper did not move to set aside his plea. The court, on its own motion, set aside such plea.

I agree that under MCLA § 750.318 (Stat Ann 1954 Rev § 28.550) a hearing need not be conducted

to determine the degree of murder when a defendant pleads guilty to a specific degree of murder. But, on a plea, the court must examine a defendant and upon examining defendant Harper the trial court below found the plea to second-degree murder was not proper and held out the next lesser offense to defendant which defendant and the trial court accepted.

By virtue of GCR 1963, 785.1(1) as applied to GCR 1963, 527.4 and 529.1, the trial court below was precluded from acting (July 10, 1967), on its own motion, to set aside the manslaughter plea offered and accepted more than 20 days prior thereto (June 8, 1967).

I do not agree that by "the deliberate choice of strategy" in accepting the manslaughter offer the defendant waived his rights to a double jeopardy defense if it later were to come into play. I further disagree with the majority opinion's application of *Henry* v. *Mississippi, supra,* as that illegal search and seizure conviction was reversed in *Henry* and remanded with utterances by five members of the United States Supreme Court calling for a finding of Henry having "knowingly waived" his Federal rights. It should be noted that Mr. Henry was also represented by counsel.

In my opinion this case should be reversed and remanded for sentencing on the manslaughter conviction, with credit to be given for time served on the void second-degree murder conviction.